# Standeford's Administrator *vs* Shultz & Co., &c.

CHANCERY.

APPEAL FROM THE BOURBON CIRCUIT.          *Case* 119.

*Gaming. Assignments. Caveat emptor.*

JUDGE MARSHALL delivered the opinion of the Court.          *July* 3.

STANDEFORD having lost a large sum to Winter, &c., at          Case stated.
the game of faro, at which Winter was the banker or
master of the game, delivered to him the note of Ken-
ningham and Spears for $6,000, payable to himself and
with his name indorsed thereon, for so much of the sum
lost and won. The note was dated on the 15th of Sep-
tember, 1841, payable in July, 1842, and was thus deliv-
ered to Winter, &c., at Paris in this State, between the
15th and 20th September. On the 20th of September,
Standeford, representing to the obligors that he had *lost*
the note, obtained from them a new note of the same
tenor, and executed to them a release of the former note.
Within a short time afterwards, the old note was present-
ed to the obligors, by an individual who was negociating
for an interest in it, when they informed him of what had
taken place. And in the following spring, Winter being
in New Orleans, there sold the note to Shultz & Co. for
bagging.

When the assigned note became due, Shultz & Co.
filled up the indorsement to themselves, sued upon it at
law, and the obligors having pleaded the release, &c.
before notice of the assignment, the plaintiffs replied
that the release, &c. was executed in fraud of the rights
of the assignee of Standeford and all subsequent holders,
and especially of themselves as innocent purchasers. In
this stage that suit seems to have been abandoned, and
Shultz & Co. filed their bill, praying to be substituted to
the rights of Standeford in the new note. They rely upon
his indorsement and delivery of the note to Winter, and
upon their purchase from him for full value, and say that
he stated and guarantied that there was no set-off nor

STANDEFORD'S
ADM'R.
vs
SHULTZ & Co. &c.

legal impediment to the collection of the note ; and that they, relying on his representations and knowing the obligors, purchased the note believing it to be just, and that it would be paid at maturity. They charge in effect, that Standeford committed a fraud upon their rights in taking the new note and executing the release, after he had indorsed and delivered the old one, and thus enabled the holder to deceive innocent purchasers, &c. &c. The bill says nothing of the consideration of the transfer to Winter, &c. or of the ignorance of the complainants.

*Decree of the Circuit Court.*

The obligors express a willingness to pay what is due upon the note to either of the other parties, but claim a set-off, which is not now in question. Standeford alledges that the note was won from him fraudulently, and relies upon the statutes against gaming and his rights under them, averring that the complainants were defrauded by Winter and not by him. The Court, upon the hearing, decreed that the complainants were entitled to the relief prayed for, and Standeford has brought the case to this Court.

*One who has lost a note at gaming may rightfully reclaim it by receiving that amount or a new note for the amount from the obligors, before a transfer by assignment to an innocent purchaser.*

Under our statutes against gaming, Standeford was not bound by his indorsement and delivery of the note to Winter, but as against Winter or any one holding the note for his use, had a right to consider and treat the transfer as void, and to claim the note or the money secured by it, as if no such transfer had been made. And although he might be deprived of the right of reclamation or annulment by the transfer of the note to an innocent purchaser, before he had exercised the right, it cannot be admitted that after an effectual reclamation or rescission of the contract of transfer or annulment of Winter's right to receive the money payable on the note, this right could be revived by Winter's assignment or sale of the note to another. Nor do we perceive that the exercise of this right of reclamation, while it existed in full force, could either be denominated at the time, a fraud upon the community, when it was no fraud upon Winter, the only party interested, or that it could, by a subsequent act of Winter, be made a fraud upon the particular individual to whom he might fraudulently sell the note. If Standeford could and did effectually destroy Winter's

right to receive the money while he had the note, it seems impossible that he could thereby have made himself responsible to Winter's subsequent vendees, unless upon the assumption, that having indorsed and delivered the note, he was bound by the transfer, so long as the note should remain out of his hands, and could only annul it even while in the hands of the winner, by actual recaption or by such legal proceedings as would bind the note itself, and put an end to its transferability. But such an assumption would, in our opinion, give greater efficacy to the assignment of the note by Standeford, and place greater restriction upon his rights than is allowable under either the statutes against gaming, or the statute authorizing the assignment of promissory notes.

Under the statutes against gaming, the assignment as between the parties, did not of itself, deprive Standeford of his right to receive the money from the obligors, nor to act with them as proprietor of the note. Under the statute of assignments, the obligors are relieved from responsibility to any assignee, by payment or other *bona fide* settlement of the demand with the payee, before notice of the assignment. And by operation of the same statute, as heretofore construed by this Court, *Reese* vs *Walton*, (4 *B. Monroe*, 507,) a blank indorsement differs from an assignment in full, in no other respect than in enabling a subsequent holder to make title to himself, as the immediate assignor of the indorser in blank, the liability of such indorser being the same, as to its basis and extent, as if the assignment had been filled up to the person who first received the note from him for a consideration, and he has against the remote purchaser, but apparently immediate assignee, the same equities growing out of the original transaction that he has against his actual immediate transferee; and these rights, inherent in the nature of the transaction, and the relation of the parties, do not seem to depend upon notice to the subsequent holder. If A. the payee of a promissory note, should pass it with his blank indorsement to B. in payment for a tract of land, and A. being evicted by paramount title, derived from B. should, while B. still holds the note, receive payment from the obligor, who has no

*Under our statutes against gaming, the assignment of a note won at gaming does not deprive the assignor of the right to recover the sum due upon the note, and the obligors are not responsible to the assignee when payment is made to obligee before notice of the assignment.*

notice of the assignment, would he hold this money in trust for B. or his subsequent assignee ? Or, as his equitable right is perfect against B. upon facts known to him, would it not be a fraud in B. to assign the note afterwards, and especially if he knew that the obligors had paid it and were discharged? And would A. be liable to a subsequent assignee without notice, because he had not instituted proceedings against B. for the recovery of the note itself?¯ As for notice, he could not give notice to all the world, and whatever notice he might attempt to give, many might still be found who had not received it. And in analogy to the case of the obligor himself, who is allowed to plead a failure of consideration, or want of consideration, or even fraud or illegality of consideration, against any assignee, without attempting either to give notice or to reclaim the note itself, we think that the assignor may also stand upon his rights, when exercised in time; that he loses no right by failing to make an actual recaption or attachment of the note itself, or by not attempting to notify the world of the consideration or want of consideration, or illegality of the assignment. And that if while he has the right of reclamation, he actually takes into his hands the money which the note calls for, or other satisfaction which is equivalent, and releases the obligors, this is a virtual reclamation of the thing which deprives the note of all value, and in effect rescinds the contract of assignment. And we think especially, that when the person holding the note at the time, and against whom these acts are rightful and valid, has knowledge of them, as may be assumed in this case, any subsequent assignment by him, is a fraud which cannot retroact upon the first assignor, whether his indorsement be in blank or in full.

In the purchase of assignable notes, the maxim "*caveat emptor*" is, except in a few particulars, fully applicable. It is the duty of the purchaser to inquire if he would be safe against the acts of the payee and obligors. And the purchaser of the note for $6,000 in the hands of a gambler, would certainly be bound to inquire. In this case, the purchasers seem to have been aware of their duty and condition, and purchased upon the representations and

In the purchase of assignable notes the maxim *caveat emptor* generally applies.

guaranty of Winter, that there was no legal impediment to the collection of the note, and relying upon the known solvency of the obligors. And as they thus leave room for the implication that they knew the assignor was not responsible, the cause of which they should have known, they can hardly be considered as innocent purchasers. And indeed we do not perceive that in their pleadings they distinctly claim that character.

Upon the whole case, therefore, we are of opinion, that Standeford cannot be regarded as having committed a fraud upon them, or as holding the second note in trust for them, and that they are not entitled to be substituted to his rights in relation to it. Whence it follows that their bill should have been dismissed.

Wherefore, the decree is reversed, and the cause remanded, with directions to dismiss the bill of Shultz & Co., without prejudice to their remedy at law, if any.

*Morehead & Reed, Hawes & Williams* for appellant: *Robinson & Johnson, Woolley and Smiths* for appellees.